# PEARL KELLER v. GEORGE WOLF AND ANOTHER.[1]

June 5, 1953.

No. 35,913.

[1]Reported in 58 N. W. (2d) 891.

*Streissguth, Berens & Rodenberg* and *Lauerman, Johnson & Gustafson,* for appellant.

*Dell, Rosengren & Rufer,* for respondents.

LORING, CHIEF JUSTICE.

This case comes to the writer on reassignment.

This is an appeal from an order denying plaintiff's motion to set aside a release and a stipulation for settlement in a personal injury action and to reinstate such cause for trial. After the motion was made but before it was heard, judgment was entered, and the motion was apparently orally expanded to include a vacation of judgment. See, Fort Dodge Lbr. Co. v. Rogosch, 175 Iowa 475, 157 N. W. 189.

Plaintiff, 23 years of age, was injured on the night of May 22, 1951, while walking on a public street in Long Prairie, Minnesota, when she was struck by an automobile driven by defendant Richard Wolf and owned by defendant George Wolf. Shortly thereafter, plaintiff retained Frank L. King as her attorney to institute a personal injury action. Subsequently, Logan O. Scow was substituted for King as her attorney. Before the action came on for trial, King filed a $2,000 lien for attorney's fees. The case was never tried on the merits since a stipulation for settlement was made on the afternoon of the day set for trial. The motion to set aside the stipulation was made almost two months later.

■ The law favors settlement of claims without recourse to litigation. Employers Mut. Cas. Co. v. C. St. P. M. & O. Ry. Co. 235 Minn. 304, 50 N. W. (2d) 689; see, Christianson v. C. St. P. M. & O. Ry. Co. 67 Minn. 94, 69 N. W. 640. However, it is well settled that a stipulation for settlement may be set aside or avoided: (1) For fraud or collusion; (2) for mistake; or (3) where the stipulation was improvidently made and in equity and good conscience should not be allowed to stand. National Council v. Scheiber, 141 Minn. 41, 169 N. W. 272; Bray v. Doheny, 39 Minn. 355, 40 N. W. 262; Wells v. Penfield, 70 Minn. 66, 72 N. W. 816; Lieberknecht v. G. N. Ry. Co. 110 Minn. 457, 126 N. W. 71; Rodgers v. U. S. & Dominion L. Ins. Co. 127 Minn. 435, 149 N. W. 671. Fraud and collusion have been expressly disclaimed by appellant's counsel and are not at issue here. There is no doubt that counsel for both parties acted with integrity and in good faith. The two grounds

upon which counsel does claim that the release should be set aside are mistake and improvidence, both of which presented questions of fact which were determined by the trial court upon affidavits presented to it for consideration.

■ The affidavits submitted in support of, and in opposition to, plaintiff's motion are conflicting in several material respects. Of course, the function of this court in reviewing orders which involve a fact determination is not to afford a hearing *de novo* or to substitute our judgment for that of the trial judge. The only question for this court to determine is whether the trial court abused its discretion when it refused to set aside the stipulation for settlement. National Council v. Scheiber, 141 Minn. 41, 169 N. W. 272. If we find that the evidence is legally sufficient to support the court's order, there was of course no abuse of discretion, and we must sustain the order. Albert v. Edgewater Beach Bldg. Corp. 218 Minn. 20, 15 N. W. (2d) 460. See, Miller v. Natwick, 110 Minn. 448, 125 N. W. 1022; Bates v. Bates, 66 Minn. 131, 68 N. W. 845; Bingham v. Board of Supervisors, 6 Minn. 82 (136).

■ On the issue of mistake, the following material facts appear. On the morning of the day set for trial, March 25, 1952, Scow discussed with plaintiff and her father, Lawrence Keller—who took part in all conversations between his daughter and Scow relating to settlement—the chances of settling the case out of court. At this time, plaintiff agreed that $10,000 would be a good settlement but that $8,000 or any lesser amount would not be satisfactory. At the noon recess, there were further negotiations with counsel for defendants' insurer, which resulted in an agreement to settle the case for $7,000. In his affidavit, Scow states that it was only after both plaintiff and her father had indicated that they were satisfied with such a settlement figure that the stipulation was entered into. Immediately after the stipulation was dictated into the record, defendants' attorney raised a question with regard to King's lien claim for attorney's fees. For the purpose of relieving defendants from any further responsibility in the matter, it was decided that defendants would pay $5,000 to Scow and $2,000 into court pending

the outcome of the lien claim. Thereafter, a written release was filed by plaintiff.

Although defendants' insurer delivered a draft for $5,000 to plaintiff's attorney, Scow, and paid $2,000 in court to await action upon King's lien, plaintiff has refused to accept any part of the money paid to Scow for her benefit.

There are indications that plaintiff's original objection was not to the $7,000 gross amount but rather to the $5,000 amount. It appears then that, in reality, plaintiff's objection was to her former attorney's fees rather than to the gross settlement figure. The trial judge described plaintiff's complaint:

" 'Plaintiff and her father called on me in chambers in company with Logan Scow. They were not opposed to the amount of the settlement,' that would be seven thousand dollars, 'but to the claim by Frank King, and could not or would not accept the fact that retention of two thousand dollars in clerk's hands pending hearing on lien did not reduce the settlement to five thousand dollars.' "

Attorney's fees may well be taken into consideration on the question of the providence of a settlement, but here there was a mere lien with no determination as to what the court would actually allow as fees.

Plaintiff contends that she agreed to a settlement of $7,000 on the mistaken assumption that said sum was to be over and above any amount required to discharge the $2,000 lien of her prior attorney. She and her father, in their joint affidavit, alleged that Scow told her, prior to settlement, that she would receive the entire $7,000 amount. Scow's affidavit is directly to the contrary. Without doubt, plaintiff knew that the lien had been filed, and there is evidence that she knew that such lien would have to be satisfied out of the $7,000. The conflicting evidence without question sustains the trial court's finding that plaintiff was laboring under no mistake when she agreed to the settlement.

■ In any event, although in Minnesota the mistake need not be "mutual" in the sense that both parties are under a similar delusion, there must be concealment or, at least, knowledge on the part

of one party that the other party is laboring under a mistake in order to set aside a release for unilateral mistake. Equity will prevent one party from taking an unconscionable advantage of another's mistake for the purpose of enriching himself at the other's expense. Nadeau v. Maryland Cas. Co. 170 Minn. 326, 212 N. W. 595; see, King v. International Lbr. Co. 156 Minn. 494, 195 N. W. 450; Norris v. Cohen, 223 Minn. 471, 27 N. W. (2d) 277, 171 A. L. R. 178. See, also, Bakke v. Bakke, 242 Iowa 612, 47 N. W. (2d) 813.

Plaintiff here admitted at the hearing on the motion that there was no mistake on the part of defendants, nor did plaintiff claim that there was any concealment on the part of defendants or knowledge that plaintiff was laboring under any mistake. There appears, therefore, to be no evidence on which the release could be set aside on the grounds of mistake in any event.

■ We next come to the question whether the settlement of $7,000 was improvidently made. Improvidence in the making of a personal injury settlement imports an absence of calculation or a thoughtless exercise of discretion whereby a result is brought about which in equity and good conscience ought not to be allowed to stand.

With respect to plaintiff's injuries, her attending physician's affidavit—which is not seriously challenged—states:

"'* * * that her injuries consisted of multiple fractures of the pelvis, compound fracture and dislocation of the right ankle, fractured rib and multiple bruises and that her condition was critical and she required blood transfusions and surgery of the ankle; that she was hospitalized for a long period of time and her hospital and doctor bill are approximately $900.00; that she is permanently crippled and will limp for the rest of her life, and that she will never be able to give normal birth to a child if the child weighs over four pounds. * * * that said Pearl Keller has a 20 per cent disability in her said ankle and leg as a result of the injuries sustained * * *.'"

Her injuries are both serious and permanent. She has suffered considerable pain and has incurred much medical expense. There was

a conflicting opinion in a letter introduced by defendants' counsel at the hearing, but there was an objection that the letter was a mere unsworn statement and, therefore, inadmissible. The objection was well taken, and the letter is not considered on this review. If no other factor were to be considered than the extent of plaintiff's injuries and damages, the settlement would clearly appear to have been improvidently made.

■ However, whether a settlement of a claim for damages has been improvidently made is not to be determined by considering only the seriousness of the injuries and the extent of the damages. Plaintiff's likelihood of being able to establish a right of recovery against defendants must also be taken into consideration. As the trial judge said in summarizing the instant situation:

"* * * They [plaintiff and her father] are apparently led by what they hear on the street—determined that they must have a very large sum in spite of the fact that the element of contributory negligence may bar recovery entirely."

Plaintiff's prospects regarding proof of negligence and contributory negligence *must* be considered and evaluated in determining whether a particular settlement is provident. It is defendant's contention that the settlement was provident since plaintiff's right of effecting any recovery at all was doubtful because of evidence of contributory negligence.

In his affidavit, counsel for defendants alleges that—

"* * * defendants' evidence would have shown that plaintiff was walking near the center line and some of defendants' evidence would have shown that she was on the wrong side of the road; * * * that there was a sidewalk for plaintiff to walk along and upon adjacent to the roadway; * * * that plaintiff was guilty of a violation of * * * [statute]."

The affidavit also contains counsel's opinion that, in view of Minnesota law as applied to plaintiff's evidence, "it was very doubtful if the plaintiff would be entitled to recover from the defendants under the law."

The affidavit of the attorney who represented plaintiff at the settlement contains similar indications of what the evidence would have shown and that such evidence "might have warranted a jury finding that * * * [plaintiff] was contributorily negligent, * * *." This affidavit also mentions the delicate health of plaintiff and that counsel was advised by plaintiff's doctor that it would be to the best interest of plaintiff to avoid a trial.

■ As indicated, most of the material evidence on this motion was introduced by way of affidavits. At the hearing on the motion, present counsel for plaintiff objected to the admission of the affidavit of defendants' counsel on the ground that any reference to what the witnesses would testify to was solely hearsay. The trial judge said that he would take the objection into consideration in passing on the motion. There was never any express ruling on the matter. On appeal, aside from a casual statement that "most of the affidavit relating thereto is hearsay, * * *," appellant's brief is silent on this subject. In reviewing the facts, an appellate court considers, of course, only the properly admitted evidence. We have no way of knowing whether the trial judge here considered the evidence admissible or not. While not absolutely necessary (Johnson v. Hanson, 197 Minn. 496, 267 N. W. 486), better practice would have been for counsel to have obtained an express ruling from the trial judge on the admissibility of the disputed evidence so that there would be a specific ruling which this court could review. See, Finley v. Quirk, 9 Minn. 179 (194) ; Bitzer v. Bobo, 39 Minn. 18, 38 N. W. 609; Naas v. Welter, 92 Minn. 404, 100 N. W. 211. In any event, on appeal an appellant must resubmit and reargue any contention that certain evidence is inadmissible. A casual passing remark in the brief that certain evidence is inadmissible will not suffice to exclude such evidence from our consideration. There is no assignment of error on this point nor any argument or authority offered relating to the exclusion of such matter.[2] Nor do respondents mention the matter or offer an argument in answer. Such a matter is not presented to this court for review. State ex rel. Pope v. Ger-

[2]In fact, there are no assignments of error at all in appellant's brief.

mania Bank, 103 Minn. 129, 142, 114 N. W. 651, 652. See, Linneman v. Swartz, 235 Minn. 107, 50 N. W. (2d) 47; Erickson v. Mathwig, 226 Minn. 55, 31 N. W. (2d) 918; Marcum v. Clover Leaf Creamery Co. 225 Minn. 139, 30 N. W. (2d) 24; Haugen v. Swanson, 222 Minn. 203, 23 N. W. (2d) 535.

■ However, we do wish to indicate that it is our opinion that the matter alleged to be hearsay is competent, admissible evidence on the issue presented by this motion. Counsel alleges under oath not that the facts enumerated are true but rather that he would have produced *evidence* of such facts. It is necessary to carefully distinguish between the facts regarding plaintiff's negligence and the facts regarding the *evidence* of plaintiff's negligence. The facts relating to the accident, which may or may not establish plaintiff's contributory negligence, could only be given by a witness to the accident or by physical evidence; but it would seem that the facts relating to the *evidence* of plaintiff's negligence could well be within the personal knowledge of anyone familiar with the preparation of the case.

The issue presented by the motion involved in this appeal is not plaintiff's contributory negligence as such but rather whether or not the settlement was provident in view of the *probable evidence* of plaintiff's contributory negligence. In deciding whether or not to settle for an amount less than the full measure of the damages, an attorney must consider the probable evidence which will be presented and its potential effect on the jury. Such probable evidence may consist of physical exhibits, such as photographs, or it may involve facts which the witness has indicated to the attorney that he will testify to. Thus, in evaluating the latter type of evidence, the very statements of the witnesses as to what they will testify to are to be considered in determining the advisability of a settlement; that is, the fact that the statements were made, as distinguished from the truth of the statements, is an important consideration. The hearsay rule has no application where the fact that a person not a witness has made a statement is relevant and the statement is introduced merely to prove the fact of its being made

and not to prove the facts stated. 7 Dunnell, Dig. (3 ed.) § 3287; Lepak v. Lepak, 195 Minn. 24, 261 N. W. 484; State v. Sweeney, 180 Minn. 450, 231 N. W. 225, 73 A. L. R. 380; Dougherty v. Garrick, 184 Minn. 436, 239 N. W. 153, 77 A. L. R. 1286. It is the notice and knowledge acquired by the statements of the witnesses that must be employed in deciding whether a settlement for a certain amount is provident.[3] It is counsel's action in the face of these statements that is being tested by the motion involved here. Of course, the accuracy of the attorney in summarizing the statements, the accuracy of the witness in relating the facts, and the possibility that the witness may change his testimony all are important in determining the weight of this evidence; but the statements themselves, as distinguished from the truth of the statements, are to be considered in deciding on a settlement and are admissible as evidence on the issue of the providence of that settlement.

Certain facts, set forth in both affidavits relating to plaintiff's negligence as such, also may have been within the personal knowledge of the attorneys, e. g., whether or not there was a sidewalk at the point of the accident.

In view of the probability of adverse testimony as indicated in the affidavits of both counsel, the opinions of both counsel as set forth in the same affidavits, and the "facts" relating to the scene of the accident known to the attorneys together with the previous record of the jury which would decide the case, plaintiff's physical condition, and the competence of opposing counsel as expressed by plaintiff's attorney, it is our opinion that there is sufficient evidence to support the conclusion of the trial judge that the settlement was provident. The ruling did not involve any abuse of discretion.

Affirmed.

Mr. Justice Dell took no part in the consideration or decision of this case.

---

[3]Statements of third parties are always admissible over a hearsay objection to charge a person to whom they were made with notice or knowledge. Brown v. Grant, 39 Minn. 404, 40 N. W. 268; Riggs v. Thorpe, 67 Minn. 217, 69 N. W. 891; Mardorf v. Duluth Superior Transit Co. 196 Minn. 347, 265 N. W. 32.